[No. 12673.  In Bank. — January 28, 1889.]

CASSIE L. FOSS ET AL., RESPONDENTS, *v.* JOSEPH HINKELL, APPELLANT.

PATENT — RAILROAD GRANT — RESERVATION — MEXICAN GRANT. — A patent to the Southern Pacific Railroad Company of land which was included in the exterior limits of a Mexican grant, which was *sub judice* at the date of the grant by Congress to that railroad company, is void from the beginning, such land having been reserved from the grant.

ID. — SURVEY — EXTERIOR BOUNDARIES OF MEXICAN GRANT — SUFFICIENCY OF FINDING — EVIDENCE. — A finding that the land sued for is within the exterior limits of a Mexican grant as shown by a particular survey, and not within its limits as shown by a prior survey, which was finally approved, is not a finding upon an issue tendered as to whether the land was within the exterior limits of the original grant.  That question is to be determined, not by any survey, but by the *expediente* of the Mexican grant, including petition, *diseño*, and grant, the boundaries designated in which may be identified by parol evidence.

ID. — ATTACKING PATENT — RIGHTS OF PRE-EMPTOR. — A settlement and possession by a pre-emptor in compliance with the laws of the United

States, upon land subject to settlement and pre-emption, gives to the pre-emptor such privity with the government of the United States that he may attack a void patent for the land.

ID. — RAILROAD GRANT — INDEMNITY LIMIT — RIGHTS OF TRESPASSER. — A mere trespasser on land situated within the indemnity-limit grant to the Atlantic and Pacific Railroad Company, having no contract with or authority from said company, cannot avail himself of the rights of that company in attacking a void patent issued by the government of the United States for the same land to the Southern Pacific Railroad Company.

APPEAL from a judgment of the Superior Court of Los Angeles County.

The facts are stated in the opinion of the court.

*Will D. Gould,* and *James H. Blanchard,* for Appellant.

The patent is void because the land was reserved from the grant, as being within the exterior boundaries of a valid Mexican or Spanish grant at the date of the location of the railroad route, and the patent was issued without authority of law. (*Doolan* v. *Carr,* 125 U. S. 618; *Newhall* v. *Sanger,* 92 U. S. 761; *Carr* v. *Quigley,* 57 Cal. 394; *Doll* v. *Meador,* 16 Cal. 295; *McLaughlin* v. *Powell,* 50 Cal. 64; *McLaughlin* v. *Heid,* 63 Cal. 208; *Southern P. R. R. Co.* v. *Crampton,* 63 Cal. 537; *Patterson* v. *Winn,* 11 Wheat. 380; *Easton* v. *Salisbury,* 21 How. 432; *Kissell* v. *St. Louis Schools,* 18 How. 27; *Reichart* v. *Felps,* 6 Wall. 160; *Wilcox* v. *Jackson,* 13 Pet. 511; *Wright* v. *Rutgers,* 14 Md. 585.)

*Edwin Baxter,* and *Chapman & Hendrick,* for Respondents.

The power of the land department ceased with the patent. (*Moore* v. *Robbins,* 96 U. S. 530; *United States* v. *Schurz,* 102 U. S. 378; *Story* v. *S. P. R. R. Co.,* 4 Land-office Dec. 396.) The paper title must control as against a mere possessor. (*Phenix Mill and Mining Co.* v. *Lawrence,* 55 Cal. 143.) The patent cannot be attacked if under any assumed circumstances it might be valid.

(*Steel* v. *Smelting Co.*, 106 U. S. 454.)   An intruder can-
not question the validity of the patent.   (*Cooper* v.
*Roberts*, 18 How. 173, 182; *Field* v. *Salisbury*, 19 How.
323; *Spencer* v. *Lapsley*, 20 How. 264; *Ehrhardt* v. *Hoga-
boom*, 115 U. S. 67; *Crommelin* v. *Minter*, 9 Ala. 594;
*Doll* v. *Meador*, 16 Cal. 295.)   No title to land within
railroad indemnity limits is acquired until actual se-
lection.   (*Barney* v. *W. & St. P. R. R. Co.*, 117 U. S. 228;
*Sioux City R. R. Co.* v. *Chicago Railway*, 117 U. S. 406;
*St. P. & S. C. R. R.* v. *W. & St. P. R. R.*, 112 U. S. 720.)

THORNTON, J. — Ejectment.   Judgment for plaintiffs,
and appeal by defendant from judgment and order deny-
ing the motion for a new trial.

The plaintiffs claimed title under a patent from the
United States of the land in suit to the Southern Pacific
Railroad Company, dated the 4th of April, 1879, and a
deed of the company, of date of the 20th of June, 1887,
conveying this land to them.

The defendant is a duly qualified pre-emptor, having
entered into and held possession of the land in suit since
the 22d of April, 1886, and ever since that day has been
a *bona fide* pre-emption settler thereon.   On the tenth
day of June, 1887, he did tender and deposit his declar-
atory statement, in due form, for the land, in the proper
United States land-office, and tendered therewith all
legal fees for filing the same.   The register and receiver
refused to file this statement, and on the same day de-
fendant appealed from this refusal to the commissioner
of the general land-office, at Washington, where the ap-
peal is now pending.

The defendant pleaded that the land in controversy
was never granted to the plaintiffs' grantor, the Southern
Pacific Railroad Company, because at the date of the
location of the route of the Southern Pacific railroad, or
about April 3, 1871, this land was within the exterior
limits of the rancho San José, a valid Spanish or Mexi-

can grant, and was thereby reserved from appropriation by the railroad company.

By reason of the foregoing facts pleaded, defendant contends that the patent to the railroad company is void.

If the land in suit here was, when the grant to the railroad company, under the acts of Congress of July 27, 1866, and March 3, 1871, took effect, within the limits of the rancho San José, and the grant of this rancho was then *sub judice*, the patent under which plaintiffs herein claim was void from the beginning.

This conclusion is sustained by the judgments of this court in *Carr* v. *Quigley*, 57 Cal. 395, and *McLaughlin* v. *Heid*, 63 Cal. 210.

The case first cited was decided January, 1881, and the last-cited case on February, 1883. The supreme court of the United States has recently (on the 21st of November, 1887), decided the same way in *Doolan* v. *Carr*, 125 U. S. 618.

The case just cited contains an elaborate discussion of the point. As a summing up of the discussion on the case last cited, the court, speaking by Miller, J., used this language: —

"These Mexican claims were often described, or attempted to be described, by specific boundaries. They were often claims for a definite quantity of land within much larger out-boundaries, and they were frequently described by the name of a place or rancho. To the extent of the claim when the grant was for land with specific boundaries, or known by a particular name, and to the extent of the quantity claimed within out-boundaries containing a greater area, they are excluded from the grant to the railroad company. Indeed, this exclusion did not depend upon the validity of the claim asserted, or its final establishment, but upon the fact that there existed a claim of a right under a grant by the Mexican government, which was yet undetermined, and

to which, therefore, the phrase ' public lands ' could not attach, and which the statute did not include, although it might be found within the limits prescribed on each side of the road when located."

As the record now stands, the finding on the issue whether the land sued for is within the exterior limits of the grant of the rancho San José is insufficient.   In fact, it cannot be regarded as a finding on the issue at all.

The court finds on this point that on the third day of April, 1871, said land was within the claimed exterior limits of the rancho San José, a valid Mexican grant, as shown by the Thompson survey, mentioned in the next finding.

In the next finding it is declared that, in August, 1868, Thompson, a deputy United States surveyor, duly made a survey of the rancho under the instruction of the United States surveyor-general for the state of California, by which survey the land in controversy was included within the exterior limits of said rancho from 1868 until said survey was rejected, in 1875; that by a former survey, made by the United States deputy surveyor Hancock, said land was excluded from the exterior limits of said rancho, which survey, with slight modifications not affecting this point, was finally approved, and the rancho was afterward patented on the twentieth day of January, 1875.

The fact required to be found is, whether the land in controversy was included within the exterior limits of the rancho San José, as originally granted by the Mexican government.

The court finds that this land was within the exterior limits of the rancho according to Thompson's survey, and not within such limits according to a prior survey of Hancock.   We cannot see how this could be.   The exterior limits of the rancho do not depend on any survey made of it.   The land sued for may be within

such exterior limits, though excluded from a survey. Though Hancock may have excluded this land from his survey, it still may be within the exterior boundaries of the ranch as granted by the Mexican government. What the exterior limits of such granted rancho were must be determined by the *expediente* of the grant issued by the Mexican government, including petition, *diseno,* and grant, the boundaries designated in which may be identified by parol evidence. (See *Doolan* v. *Carr, supra.*)

That the Mexican grant for the rancho above named was *sub judice* long after the definite location of the railroad was made, is clearly found.

The grant being *sub judice*, as above found, on the 3d of April, 1871, if the land in suit was within the outside boundaries of the grant appearing in the granting documents as made by the Mexican government, then it was not granted by the act of Congress of the 27th of July, 1866, or of the 3d of March, 1871, to the Southern Pacific Railroad Company, and the patent to it was void, and nothing passed by the deed of the railroad company to the plaintiffs. (See cases above cited.)

It is argued that the defendant should not be allowed to attack the patent of the United States herein, because he is not in privity with the United States. The settlement by the defendant as a pre-emptor on the land in suit was, when made, in compliance with the laws of the United States. And when this land, being a part of the rancho San José as granted by the Mexican government, was excluded from it by a lawful survey, it became subject to settlement and pre-emption. Defendant was then lawfully in possession under the laws of the United States, and being then so in possession, he was in privity with the United States, the grantor in the patent. He entered and remained in possession under the grantor by its permission and authority, and the United States had no power to turn him out of possession, unless by

proceedings in condemnation ·of the land for public use, and compensation for defendant's property duly made to him.

The views just above stated are sustained by the cases decided by this court above cited, and by the case cited decided by the supreme court of the United States.

The defendant argues further, that the fact that the land in suit is within the indemnity-limit grant of the Atlantic and Pacific Railroad Company can be availed of by him as a defense to this action.

This fact is urged as a defense, if the land in suit was not within the exterior limits of the rancho San José when the line of the Southern Pacific road was definitely located.

It must be observed that if the land was within the exterior limits of the rancho above mentioned when the line of the Atlantic and Pacific railroad was definitely located, it was not granted to the Atlantic and Pacific Railroad Company. (See third section of the act of July 27, 1866, pp. 294, 295.)

If it was without the limits of the rancho San José, but within the indemnity limits above mentioned, then it does not appear that the defendant was in possession by authority of or by contract with the Atlantic and Pacific Railroad Company. He was then in possession as a mere trespasser or intruder, and could not set up such defense against the patent of the United States under which plaintiffs claim.

For the error above pointed out, the judgment and order are reversed, and the cause remanded, with directions to the court below to find, on the testimony already introduced, and such further testimony as may be introduced by either party, whether or not the land in suit was, on the third day of April, 1871, within the exterior boundaries of the rancho San José as granted by the Mexican government, and on such findings to enter judgment.

Ordered accordingly.

WORKS, J., and SHARPSTEIN, J., concurred.

PATERSON, J., concurring.—I concur. The court found that "the plaintiffs' right of recovery of the land in controversy is based on a patent from the United States to the Southern Pacific Railroad Company, dated April 4, 1879, and a deed of said land from said company to the plaintiffs dated January 20, 1887."

Neither the company nor plaintiffs were ever in possession of the lands. Defendant was in the actual possession more than a year prior to plaintiffs' purchase from the company, and has ever since been in exclusive possession, claiming the land under the pre-emption laws. Ten days prior to the date of plaintiffs' purchase from the company, defendant tendered a declaratory statement and the usual fees to the officers of the United States land-office, and upon their refusal to accept the same, he immediately filed an appeal to the commissioner of the United States land-office. That appeal is still pending. These facts, under the decision of the supreme court of the United States in *Doolan* v. *Carr*, *supra*, entitled the defendant to question the validity of the patent from the United States, and they exclude plaintiffs from the benefit of the act of Congress passed March 3, 1887, for the relief of *bona fide* purchasers. They are not *bona fide* purchasers. (14 Copp's Landowner, 214–217.)

McFARLAND, J., concurred in the judgment.