POWER ET AL., RESPONDENTS *v.* SLA ET AL., APPELLANTS.

[No. 1203.]

[Submitted April 11, 1900. Decided June 25, 1900.]

*Mines and Mining—Ejectment—Pleading—Forfeiture—Annual Representation Expenditure—Declaratory Statement —Demurrer to Counterclaim.*

1. Equitable defenses—as well as defenses at law—may be interposed in actions in ejectment, but, in such cases, the answer must contain all the allegations necessary to constitute the defense or warrant the relief sought.
2. After patent has passed to the entryman, mere strangers will not be heard to question the validity of the proceedings by which the patent was obtained; in such cases the government only can contest its validity.
3. The annual expenditure required by Rev. Stat. U. S. Section 2324, may be made either in labor or improvements put on the claim itself, or upon one of a group of contiguous claims to which the particular claim belongs, or, in some instances, upon adjoining ground not included in any claim.
4. One who relies upon the plea of forfeiture must set forth in his pleading: (1) the facts upon which he relies to overthrow the prior right of his adversary, (2) the facts sufficient to show that he himself was entitled to demand a patent from the government; and there rests upon him the burden of establishing such facts by clear and convincing proof.
5. Since Rev. St. U. S. Section 2324, authorizes the expenditure required to be made on lode mining claims to be either in work and labor or improvements, it is not sufficient for defendants, claiming under a relocation after an alleged forfeiture by plaintiffs, to allege as such forfeiture that plaintiffs failed during certain years to perform $100 worth of work and labor on the claim, but they must also negative the expenditure of that amount in improvements.
6. Under the Compiled Statutes of 1887, Section 1477, requiring locators of mining claims to make and to file for record with the county recorder a declaratory statement thereof on oath, it is not sufficient for defendants, claiming under a location after an alleged forfeiture by plaintiffs, to allege simply that they have caused a record notice of their location to be made, for this is a conclusion, and does not suggest that the notice was ever verified, or put on record in the proper county, nor is such allegation aided in any respect by the subsequent averment that the defendants have fully complied with the laws of the United States and the State of Montana, as this is but a conclusion.

7.  The fact that a demurrer to an answer denominates it a "defense" instead of a "counterclaim" will be regarded in the appellate court as immaterial, where both counsel and the trial court have treated it as attacking the pleading as a counterclaim.

8.  Where a demurrer is interposed to a counterclaim on the ground that it does not state facts sufficient to constitute a cause of action, this being a ground of demurrer under Code of Civil Procedure, Sec. 680, Subd. 6, it is sufficient to state the objection in the language of that subdivision.

*Appeal from District Court, Lewis and Clarke County; Henry N. Blake, Judge.*

Action in ejectment brought by T. C. Power and John B. Wilson against James Sla and Con. Kelly. From a judgment in favor of plaintiffs, defendants appeal. Affirmed.

### Statement of the Case.

Action in ejectment involving the ownership and possession of the Clementh, Union Jack, and Blue Boy contiguous lode mining claims, situate in Lewis and Clarke county, and designated by the United States surveyor general at Helena as mineral surveys Nos. 1,743, 2,206, and 2,207.

The complaint states first a cause of action in the usual form, and then in a second count alleges grounds for equitable relief by way of injunction to prevent trespassing by defendants pending the litigation. The defendants join issue upon all the allegations except as to their hostile possession of the ground embraced in the Clementh lode mining claim. Of this they claim to be the beneficial owners. They then proceed to set up an equitable defense by way of "cross complaint," by which it is sought to have plaintiffs declared trustees of the legal title to the Clementh claim for the benefit of defendants, and to compel a transfer of this title to them by suitable conveyance. The facts upon which they seek this relief are alleged as follows:

1.  "That on the 10th day of April, 1886, plaintiffs claimed to be in the actual occupation and possession of that certain quartz lode mining claim known and designated as the 'Clementh Quartz Lode Mining Claim,' situate in Ten Mile (unorganized) mining district in Lewis and Clarke county, Montana, under a location and record thereof theretofore claimed to be

made, in accordance with the regulations of said district and the laws of the United States and of the said territory in such case made and provided by their grantors and predecessors in interest.''

2.   ''That on the 10th day of April, 1886, the said plaintiffs made their application in the United States land office at Helena, in said territory, now state, of Montana, for a patent for said premises, the same being designated 'Survey No. 1,743' and 'Mineral Application No. 1,662'; and that, notwithstanding said plaintiffs were so claiming to be in possession thereof, and entitled to the possession thereof, they failed and neglected to do and perform one hundred dollars' worth of work or labor thereon, or any work or labor thereon, during the years 1889, 1890, and 1891, on account whereof said mining claim became open for relocation in the same manner as if no location had ever been made of the same, and said application abandoned.''

3.   ''That while the said premises were thus a part of the unoccupied and unappropriated lands of the United States, and open to relocation, and before the said plaintiffs, or their grantors, or the original locators thereof, or their successors in interest, had resumed work upon said premises, defendant James Sla and one R. Burridge, being then citizens of the United States of America, on the 22d day of July, 1892, entered upon and discovered upon said claim a vein or lode, bearing gold, silver, and lead, with two well-defined walls, and distinctly marked the boundaries of the said premises as a new location, under the name hereinafter mentioned, upon the ground, so that said boundaries could be readily traced, and did, on the 23d day of July, 1892, cause a record notice of their said location to be made, which contained the names of the locators, the date of the location, and such description of said claim by reference to permanent monuments as would and did identify the same, and which was designated and named the 'Minnehaha Lode Mining Claim,' and which is more particularly described as follows, to wit: 'That certain quartz lode mining claim designated as the 'Minnehaha Lode Mining

Claim,' situate in Ten Mile (unorganized) mining district, Lewis and Clarke county, Montana, about six hundred feet east of Sand Creek, and about three miles west of Ten Mile creek, and more particularly described as follows: Beginning at the discovery and running eighty-five feet southwest to post No. 1; thence running three hundred feet southeast to post No. 2; thence fifteen hundred feet in a northeast direction to post No. 3; thence six hundred feet north to post No. 4; thence fifteen hundred feet southwest to post No. 5; thence three hundred feet southeast to post No. 1, the place of beginning,'—on account whereof defendant James Sla and said R. Burridge became possessed and entitled to the possession thereof.''

4.   ''That said R. Burridge conveyed and transferred all of his right, title, and interest in said premises to defendant Con Kelly, and that ever since the location and recordation of said mining claim and the possession and right of possession thereof by said defendants and their predecessors in interest they have done and performed work and labor thereon required to be done and performed, and in all respects complied with the regulations of said mining district and the laws of the United States and the said state of Montana; and that, notwithstanding plaintiffs had forfeited their possession and right of possession of said premises as aforesaid, they did, by virtue of their said application and publication of notice theretofore given on the 11th day of April, 1886, and for sixty days thereafter, as by law required, and without any new application or notice, on the 25th day of November, 1892, enter and pay for said Clementh lode claim as aforesaid, being mineral entry No. 2,774, and on the 6th day of June, 1893, obtained a United States patent therefor, being patent No. 23,010, and which said premises are more particularly described in said patent, to which reference is made,—all of which said proceedings had on or before November 25, 1892, were without the knowledge, acquiescence, or consent of defendants or their predecessors in interest.''

Then follow the additional allegations that defendants and their predecessors in interest have in all respects complied

with the law so as to entitle them to a patent; that no notice of application for patent for plaintiffs was ever given after the Clementh lode had become subject to relocation; that the United States land department erroneously proceeded to issue patent to plaintiffs without notice to defendants or their predecessors, and without any hearing; that the rights of the defendants were never considered nor passed upon by said land department; that the plaintiffs and their predecessors in interest had full knowledge of the fact of the location of the property by defendants and their predecessors, and well knew that the defendants claimed the same by virtue of their location aforesaid; that, so knowing of defendants' claims, they fraudulently proceeded to obtain patent for the said Clementh lode without the knowledge of defendants or their predecessors in interest; that the defendants and their predecessors in fact had no knowledge of the plaintiffs' application; that the plaintiffs' patent was secretly obtained while the defendants were in the actual, quiet, and peaceable occupation and possession of the premises aforesaid, and were entitled to the entire beneficial interest therein; that by reason of the erroneous issuance of the patent aforesaid to plaintiffs they have acquired an apparent legal title to said premises which, in equity and good conscience, belongs to defendants; that plaintiffs hold such title for the exclusive use and behoof of the defendants; that there are no claimants to said land, or any part thereof; that under the law applicable to mineral lands of the United States, after the expiration of the notice of the application for a patent by plaintiffs, the only mode of ascertaining whether or not the work and labor for the years 1889, 1890, and 1891 had been done and performed by the plaintiffs was by requiring them to give a new notice as if said application was an original one; that by mistake in the interpretation of the law and the principles applicable thereto the officers of the United States land department dispensed with the publication of such notice; that, if said notice had been given, the defendants would have been afforded an opportunity to interpose their adverse claim, and to fully and completely estab-

lish the validity of the same; and that by reason of the interpretation so erroneously made of the law, and the mistake on the part of the officers of the land department in not requiring a republication of notice aforesaid, the defendants were deprived of their opportunity of being heard.

Judgment is demanded that the plaintiffs be enjoined from the prosecution of their suit, that they be declared trustees of the legal title to the ground embraced by the Clementh lode for the use and benefit of defendants, and that they be directed to transfer the title to defendants by a suitable and proper conveyance.

To the "cross complaint" plaintiffs interposed a general demurrer, which was sustained. No amendment being made, a trial was had upon the issues made by the denials of defendants, which resulted in a verdict and judgment for plaintiffs. Defendants appeal from the judgment.

*Mr. E. W. Toole,* for Appellants.

*Messrs. Walsh & Newman,* for Respondents.

**MR. CHIEF JUSTICE BRANTLY,** after stating the case, delivered the opinion of the Court.

The only question presented upon this appeal arises upon the correctness of the action of the district court upon the demurrer. It is conceded by the appellants that the proceedings of the land department of the United States in the disposition of the public lands are judicial in their character, and that the determinations therein by the proper officers, acting within their jurisdiction, upon questions of fact, or of mixed law and fact, are conclusive upon the courts, and cannot be revised or disturbed by them. The contention is made, however, that the courts, while recognizing the dignity of a patent from the government, may, nevertheless, through their equitable powers, control and limit its operation in accordance with the principles of common justice as between the grantee of the legal title under the patent and others who

have the beneficial interest in the land conveyed; that section 2322 of the Revised Statutes of the United States secures to the locator of a mining claim valuable property rights which cannot be taken away by the government or any person ·except by due process of law which affords reasonable notice and an opportunity to be heard; that when a valid relocation of a claim has been made after forfeiture of the original location pending a suspended application for patent by failure on the part of the applicant to do annual representation work pending the suspended proceedings, and before payment to the government by the applicant, the relocation wipes out the original location completely, and gives to the second locator all the rights conferred by the original location; and that if, after the relocation is completed, the first locator proceeds under his suspended application to make payment, and thus secures a patent without publication of an additional notice, and without the knowledge of the second locator, a wrong is thus committed upon the second locator, which a court of equity will redress by holding the patentee a trustee for the second locator. This argument proceeds upon the assumption that it is incumbent upon the officers of the land department under these circumstances to require a new notice to be published when the proceedings for patent are resumed, and that the failure in this particular on their part is such a mistaken application of the law to the facts of the case that a court of equity ought to intervene and correct the wrong thus done by decreeing the legal title to the rightful owner. This is upon the principle that one who wrongfully · obtains the title to land which, in equity and good conscience, belongs to another—whether it be done in good faith or not—will be charged as trustee for the latter.

It is well settled that under our system equitable defenses, like the one sought to be invoked here, as well as defenses at law, may be interposed in actions in ejectment. In such cases however, the answer is in the nature of an original bill in equity, and must contain all the allegations necessary to constitute the defense or warrant the relief sought. (*Reece* v.

*Roush,* 2 Mont. 586; *Lamme* v. *Dodson et al.*, 4 Mont. 560,
2 Pac. 298.) It must disclose a case, which, if established by
proof, would constitute a bar to plaintiff's case, and justify a
decree granting appropriate affirmative relief to defendant,
such as is demanded in this case. Assuming, for the purpose
of this discussion, without deciding the question, that the law
is as defendants assert it to be, and that this court would be
warranted, in a proper case, in granting appropriate relief,
the defendants do not disclose a case calling for its application.
It is incumbent upon them to show such facts as that it will
appear therefrom that they have connected themselves with
the original source of title in the government, and that their
rights are injuriously affected by the existence of the patent.
They must show such equities in themselves as will control the
legal title in plaintiffs' hands. (*Foss* v. *Hinkell,* 78 Cal. 158,
20 Pac. 393; *Chapman* v. *Quinn,* 56 Cal. 266; *South End
Mining Co.* v. *Tinney* 22 Nev. 19, 35 Pac. 89; *Hermocilla*
v. *Hubbell,* 89 Cal. 5, 26 Pac. 611; *Boggs* v. *Merced Mining
Co.,* 14 Cal. 279; *Van Wyck* v. *Knevals,* 106 U. S. 360, 1
Sup. Ct. 336, 27 L. Ed. 201; *Ard* v. *Brandon,* 156 U. S.
537, 15 Sup. Ct. 406, 39 L. Ed. 523; *Smelting Co.* v. *Kemp,*
104 U. S. 636, 26 L. Ed. 875; *Morre* v. *Robbins,* 96 U. S.
530, 24 L. Ed. 848; *Steel* v. *Smelting & Refining Co.,* 106.,
U. S. 447, 1 Sup. Ct. 389, 27 L. Ed. 226; *Johnson* v. *Towsley,* 80 U. S. (13 Wall.) 72, 20 L. Ed. 485; *Sparks* v. *Pierce,*
115 U. S. 408, 6 Sup. Ct. 102, 29 L. Ed. 428; *Deffeback* v.
*Hawke,* 115 U. S. 392, 6 Sup. Ct. 95, 29 L. Ed. 423.)
making the statement in another form, the defendants stand in
no attitude to question the title of plaintiffs unless by their allegations they present facts showing not only that at the time the
patent was issued to plaintiffs they (plaintiffs) were not entitled to it by reason of their failure to perform the conditions
required by law, but also that they themselves have performed
all the conditions necessary to entitle them to demand a patent
from the government. The rule is deduced from the cases
cited: That, after the patent has passed to the entryman,
mere strangers will not be heard to question the validity of

the proceedings by which the patent was obtained. In such cases the government only can contest its validity in proceedings properly brought to set it aside.

The defendants, in order to show their right to a patent, attempt to allege a forfeiture by the plaintiffs during the years 1889, 1890, and 1891, and a relocation of the ground covered by the Clementh lode by Sla and Burridge in 1892 under the name of the "Minnehaha Lode." Their averment in this connection is that "they (plaintiffs) failed and neglected to do and perform one hundred dollars' worth of work or labor, or any work or labor, thereon during these years." The language of the statute (Rev. St. U. S. Sec. 2324) is: "On each claim * * * not less than one hundred dollars' worth of labor shall be performed or improvements made during each year." It is the well settled doctrine that the annual expenditure required by the foregoing provision may be made either in labor or improvements put upon the claim itself, or upon one of a group of contiguous claims to which the particular claim belongs, or, in some instances, upon adjoining ground not included in any claim. (2 Lindley on Mines, Sections 629-631; *Smelting Co.* v. *Kemp, supra; Jackson* v. *Roby*, 109 U. S. 440, 3 Sup. Ct. 301, 27 L. Ed. 990; *Book* v. *Justice Mining Co.* (C. C.) 58 Fed. 106; Rev. St. U. S. Sec. 2324.) The outlay is to be regarded as made upon the claim, within the meaning of the statute, whenever it is made for the development of the claim, and to facilitate the extraction of the minerals it may contain. (*Smelting Co.* v. *Kemp, supra.*)

The plea of forfeiture is in the nature of a confession and avoidance. It admits a prior right in the plaintiff, which would have continued but for the entry and location by the defendant, which, under the mining law, has terminated it. (*Morenhaut* v. *Wilson*, 52 Cal. 263.) One who relies upon such a plea, must set forth the facts upon which he relies to overturn the prior right of his adversary, and establish them by clear and convincing proof. (*Renshaw* v. *Switzer*, 6. Mont. 464, 13 Pac. 127; *Wulf* v. *Manuel*, 9 Mont. 286, 23 Pac. 723; *Mattingly et al.*, v. *Lewisohn*, 13 Mont. 508, 35

Pac. 111; *Strasburger et al.* v. *Beecher*, 20 Mont. 143, 49 Pac. 740; *Hammer* v. *Garfield Mining and Milling Co.*, 130 U. S. 291, 9 Sup. Ct. 548, 32 L. Ed. 964.) He assumes the burden of pleading and proving that the prior owner has done none of the acts which, under the statute, he may do to preserve his right. The allegation quoted from the answer is not sufficient. True, it negatives the doing of any "work or labor" upon the Clementh claim during the years 1889, 1890, and 1891, and this constructively excludes the idea that any expenditure was made in this way on any adjoining ground for the benefit of the claim; but the terms "work" and "labor" are not synonymous with the term "improvements." The former have reference to prospecting and excavating for the purpose of development; while the latter, though comprehensive enough to include everything signified by the former, has reference also to tangible, material additions to the claim in the way of machinery, buildings, and other structures put in place or erected for the purpose of developing the property and extracting minerals contained in it. Therefore, merely to negative in the pleading that $100 worth of labor has been done during the year, and to establish this by proof, be it ever so clear and convincing, is not sufficient to warrant a finding of a forfeiture. The pleading must also negative the second alternative, so as to admit proof showing a non performance in that particular. The allegations of the answer are directed to the first alternative only. Under them, proof would not be admissable to show that plaintiffs did not, during the years named, put upon the surface of the claim, or upon adjoining ground, machinery, buildings, or other structures which were designed to be used and could be used for the purpose of aiding in the extraction of ores from the Clementh claim. In this respect, therefore, the statements in the answer are insufficient, and the demurrer was properly sustained.

The demurrer was also properly sustained on another ground; for not only was it incumbent upon the defendants to properly plead and prove a forfeiture on the part of the plain-

tiffs, but also to allege facts sufficient to show that they were themselves entitled to demand a patent from the government. They attempt to allege the facts showing their location of the Minnehaha lode, but fail in two particulars ᛫to show a valid location. The statute (Compiled Statutes of 1887, Fifth Division, Section 1477) provides: ''Any person or persons who shall hereafter discover any mining claim upon any vein or lode bearing gold, silver   *   *   *   or other valuable deposits,   *   *   *   shall, within twenty days thereafter, make and file for record in the office of the recorder of the county in which said discovery or location is made, a declaratory statement thereof, in writing, on oath, made before some person authorized by law to administer oaths, describing such claim in the manner provided by the laws of the United States.'' It is nowhere alleged in the answer that the required declaration was ever made and filed with the recorder of Lewis and Clarke county or elsewhere. The allegation on this subject is that Sla and Burridge ''did, on the 23d day of July, 1892, cause a record notice to be made.'' This statement is at best a conclusion, and, in the connection in which it is made, can be held to mean no more than that some sort of a notice in writing was made. It does not suggest that the notice was ever verified, or put upon record in the proper county. Nor is it aided in any respect by the subsequent averment that defendants have fully complied with the laws of the United States and the state of Montana, and are entitled to a patent. This is but a conclusion, and embodies no fact to supply the omissions made in the foregoing allegations. The answer, therefore, fails to show that defendants so connected themselves with the government that they may assert title in themselves at the time plaintiffs' patent was issued, and that their rights have been injuriously affected by an erroneous application of the law by the officers of the land department. No matter what notice should have been given by these officers, the defendants do not disclose facts sufficient to show that they were other than strangers to the title, and cannot be heard to complain.

The defendants, in their reply brief, argue that the questions raised by the plaintiffs as to the sufficiency of the allegations contained in the affirmative answer should not be considered, because the demurrer denominates it a "defense" instead of a "counterclaim," and does not distinctly specify objections to it, as required by section 715 of the Code of Civil Procedure. This part of the answer is in form and substance an equitable counterclaim and not a defense. (Bliss on Code Pleading, Sec. 349.) It properly belongs to the class of counterclaims mentioned in section 714 of the Code of Civil Procedure, as distinguished from defenses and counterclaims mentioned in section 711, and should have been attacked accordingly. Both counsel and the trial court, however, treated the demurrer as an attack upon the pleading as a counterclaim instead of a defense. It is, therefore, of no moment in this court that the demurrer does not correctly name the pleading which it sought to attack.

Nor can counsel be sustained in the contention that the demurrer is insufficient in that it does not point out specific objections to the answer. Section 715, *supra*, provides that the demurrer to a counterclaim may specify the objections to it in the same way as when interposed to a complaint. Section 681 of the Code of Civil Procedure provides that, when the demurrer to a complaint is upon the ground mentioned in subdivision 6 of section 680, which enumerates the grounds of demurrer to a complaint, the objection may be stated in the language of that subdivision.

The judgment of the district court is affirmed.

*Affirmed.*

MR. JUSTICE WORD, not having been a member of the Court when this case was argued, took no part in the decision.